LEWIS GERMAN & CO v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 12, 1905.)

No. 175.

CUSTOMS DUTIES—CLASSIFICATION—SPENT GINGER.

The article known as spent ginger, which is a by-product from the treatment of ginger root in the manufacture of ginger extract, etc., and consists of a dried cake of ginger particles, is *held* to be "ginger root, unground," as enumerated in paragraph 667, Tariff Act July 24, 1897, c. 11, § 2, Free List, par. 667, 30 Stat. 201 [U. S. Comp. St. 1901, p. 1688.]

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decision of the Circuit Court, Southern District of New York (128 Fed. 467), which affirmed a decision of the Board of General Appraisers, sustaining the collector of the port of New York in his classification for duty of certain imported merchandise.

Albert Comstock, for appellants.

D. Frank Lloyd, for the United States.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

LACOMBE, Circuit Judge. The relevant paragraphs of the tariff act of 1897 are:

"Par. 287. Spices: Mustard, ground or prepared in bottles or otherwise, ten cents per pound; capsicum or red pepper, or cayenne pepper, two and one-half cents per pound; sage, one cent per pound; spices not specially provided for in this act, three cents per pound." Act July 24, 1897, c. 11, § 1, Schedule G, 30 Stat. 173 [U. S. Comp. St. 1901, p. 1653].

"Free List, par. 667. Spices: Cassia, cassia vera and cassia buds; ·cinnamon and chips of; cloves and clove stems; mace; nutmegs; pepper, black or white, and pimento; all of the foregoing when unground; ginger root, unground and not preserved or candied." Section 2, 30 Stat. 201 [U. S. Comp. St. 1901, p. 1688].

The article in question is known as "spent ginger." The appropriateness of the term will appear later. It is not disputed that it is a spice, and that the collector's classification under paragraph 287 would be correct, unless it is within the term "ginger root unground and not preserved or candied." The Board of General Appraisers found that "it is known to trade and commerce only as ginger, and it is also admitted that it has been ground." The testimony returned does not warrant such finding. The single witness who was examined before the board testified that the merchandise is a by-product in the manufacture of ginger extract or ginger ale. The crude root is run through cylinders, which crack it into pieces about an inch around. It is then distilled, and after that process is completed is removed from the still and pressed, so as to remove the moisture. The result is a dried cake of small particles of ginger, resulting in part from the cracking, in part from the disintegration of the vegetable matter in the stuff. It is in lumps, cakes,

137 F.—52.

and strings. There was no admission before the board that the ginger had been ground.

Some additional testimony was taken in the Circuit Court, which did not modify the foregoing description of the process. The article is sold "as a cheapening product for a cheap quality, used for the same purposes as ginger absolutely." It has still a gingery taste, and is used to dilute ginger from which the essential element has not been distilled. Examination of the cake shows that it can be reduced by the hand to a quite finely divided substance, the particles of which, however, are irregular in size. The Circuit Court reached the conclusion that the process was substantially the equivalent of grinding, and that the root had been reduced to small particles, and was within the dictionary meaning of "ground," wherefore it could not be considered as wholly unground.

The tariff schedules in many instances impose a different rate on articles which they call "ground" from that imposed on them when unground, thus following a distinction which had already been made in trade and commerce. In determining to which class any particular sample belongs, the statute should be construed in conformity to the commercial understanding. One of the witnesses called by the government testified that "all ginger is unground until it has been ground," and the proof in the case is convincingly to that effect. The government's witnesses all testified that ginger root in the condition of this importation would not be accepted by the trade as a good delivery of ground ginger, and it further appears that the distinction made is not merely a nominal or unsubstantial one, based on the circumstance that the root has been treated by a different process from that used in producing ground ginger. Witnesses called by both sides testified that it contained "shreds," the fibrous material of the unground root, which would have to be eliminated before it could be known in trade as ground ginger, and that such elimination could be secured apparently only by putting it in a mill and grinding it. We are therefore of the opinion that the importation is still unground, within the meaning of the tariff act.

The decisions of the Circuit Court and of the Board of General Appraisers are reversed.